REVISED JUNE 25, 2002

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

**No. 00-11279**

**ARTURO GALVAN,**

**Petitioner-Appellant,**

**VERSUS**

**JANIE COCKRELL, DIRECTOR, TEXAS DEPARTMENT**
**OF CRIMINAL JUSTICE, INSTITUTIONAL DIVISION,**

**Respondent-Appellee.**

Appeal from the United States District Court
For the Northern District of Texas

June 6, 2002

Before DAVIS, DeMOSS, and STEWART, Circuit Judges.

DeMOSS, Circuit Judge:

In January 1996, Arturo Galvan was convicted by a jury in state court of aggravated kidnaping. Galvan pleaded true to repeat offender charges and was sentenced to 40 years of imprisonment. His conviction and sentence were affirmed on direct appeal. Galvan's first of two state habeas applications, pertaining to the revocation of his probation which was used to enhance his sentence,

was denied by the Texas Court of Criminal Appeals without a written order. Galvan's second state habeas application was filed on September 21, 1998, and was also denied by the Texas Court of Criminal Appeals. Galvan then filed a § 2254 petition raising several claims, including: (1) ineffective assistance of counsel for failing to convey a plea bargain offer; (2) an erroneous jury charge; and (3) ineffective assistance of counsel for failing to object to the erroneous jury charge. Galvan's petition was denied by the district court and this Court granted a COA on all of the above issues.

## BACKGROUND

On December 3, 1994, Arturo Galvan was driving with Michael Beck and Morgan Rehbeger when he saw fourteen-year-old Brandy Rigsby at a pay phone with her boyfriend Jason Rankin. Galvan and his companions surrounded the couple, but Rankin evaded them by running away. Galvan then coerced Rigsby into entering the car by threatening her and indicating that he had a firearm. Rigsby entered the car and Rehbeger and Beck got into the back seat. They drove to a nearby Park & Ride where Galvan forced Rigsby to have sexual intercourse with him. They then drove Rigsby back to the pay phone and released her.

On January 18, 1996, Galvan was convicted by a jury of aggravated kidnaping which was enhanced by two prior convictions. Before the trial, the state made a plea offer of 25 years, but this

2

offer was rejected. The jury assessed punishment at 40 years' imprisonment. Galvan's conviction was affirmed on March 14, 1997, by the Court of Appeals for the Second District of Texas, and his petition for discretionary review was refused by the Texas Court of Criminal Appeals on October 1, 1997.

Galvan filed a state habeas application on September 21, 1998. On October 20, 1999, the Texas Court of Criminal Appeals denied his application without written order, relying on the findings of the trial court without a hearing. Galvan then filed a federal habeas petition on November 1, 1999. On May 1, 2000, a magistrate judge entered recommendations and on September 22, 2000, the district court entered final judgment denying Galvan's petition for writ of habeas corpus.

## DISCUSSION

<u>Was Galvan's counsel ineffective for failing to advise Galvan to accept a plea offer?</u>

Galvan argues that his counsel was ineffective for failing to advise him to accept the state's plea offer. Galvan's family retained Charles Roach to represent him, and they contracted to pay Roach $1,600 as a retainer and to continue making monthly payments of $150 until his total fee of $5,000 was paid. Galvan contends that when the state's plea offer of 25 years was rejected, $2,950 remained due, indicating that Roach was motivated not by his client's best interest but by his concern for the remaining balance. Galvan alleges that Roach advised his family that the

3

offer was "ridiculous," despite the existence of highly incriminating evidence against Galvan. Galvan asserts Roach did not explain the dangers of being convicted, despite Galvan's own mistaken beliefs of innocence.

In response to Galvan's allegations, the state habeas court ordered a hearing-by-affidavit on Galvan's ineffective-assistance-of-counsel claims. Roach submitted an affidavit which states:

> My name is Charles H. Roach. I was the attorney of record for Arturo Galvan for his criminal cases. At all times Mr. Galvan maintained that he was innocent of the charges and would not plead guilty. Mr Galvan was aware of the pleas offers [sic] of the States but did not want to enter into a plea bargain.

The state habeas court accepted Roach's averments and found that Galvan was aware of the state's plea offers but maintained his innocence and chose not to enter into a plea bargain. The district court afforded the presumption of correctness to this fact finding and concluded that Galvan had failed to rebut it with clear and convincing evidence. Galvan maintains, however, that the state court findings failed to resolve the factual issue of the extent and nature of Roach's advice to Galvan regarding the plea offer, and, therefore, that the district court gave improper deference to the state court's rejection of this claim. Galvan asserts, because a fact issue was not properly resolved, he should have been afforded a hearing in federal court.

This Court reviews findings of fact for clear error. ***United***

4

*States v. Gipson*, 985 F.2d 212, 214 (5th Cir. 1993). A factual finding will be determined to be clearly erroneous only if it leaves the Court with the definite and firm conviction that a mistake has been made. *United States v. Scott*, 987 F.2d 261, 264 (5th Cir. 1993). This Court defers to the trier of fact in resolving conflicts requiring credibility determinations. *United States v. Samples*, 897 F.2d 193, 198 (5th Cir. 1990).

Under the two-prong test enunciated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), Galvan must show that counsel's assistance was deficient and that the deficiency prejudiced him. In evaluating the first prong, judicial scrutiny of counsel's performance must be highly deferential, and courts must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689. Under the second prong, Galvan must demonstrate prejudice by showing that his attorney's errors were so serious that they rendered the proceedings unfair or the result unreliable. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

As we have already noted, the state court ordered a hearing-by-affidavit in response to Galvan's claims and chose to believe Roach's affidavit to hold that Galvan knew about the plea and chose not to enter into a plea bargain. Under pre-AEDPA law, "a fact-finding procedure that involves credibility determinations and is based on a 'paper hearing' affords the habeas petitioner a full and

5

fair hearing when the state court judge who presided over the petitioner's trial conducts the habeas proceeding." *Amos v. Scott*, 61 F.3d 333, 347 (5th Cir. 1995). In this case, Judge Sharen Wilson presided over Galvan's trial and conducted the habeas proceeding. Judge Wilson accepted the averments in Roach's affidavit and her decision to do so acts as an implicit rejection of Galvan's allegations and a finding that Galvan was not credible. *See Self v. Collins*, 973 F.2d 1198, 1214 (5th Cir. 1992). As the state court's decision to deny relief was a credibility determination, we conclude that the district court did not err in presuming that the factual findings of the state court were correct and that Galvan has not rebutted that presumption with clear and convincing evidence.

Were the jury instructions erroneous?

Galvan argues he was denied due process by a jury instruction that misinformed jurors that good-time credit would count towards parole eligibility. He contends that if the jury had been correctly instructed that he was required to serve at least 20 years of a 40-year sentence before becoming eligible for parole, the outcome of the proceedings, i.e., his sentence, would have been different. Galvan argues further that defense counsel was ineffective for not objecting to the error in the jury charge.

Improper jury instructions in state criminal trials do not generally form the basis for federal habeas relief. *Estelle v.*

6

*McGuire*, 502 U.S. 62, 71-72 (1991) (stating that federal habeas courts do not grant relief solely on the basis that a jury charge was erroneous). In examining habeas claims of improper jury instructions, the "inquiry is not whether there was prejudice to the [petitioner], or whether state law was violated, but whether there was prejudice of constitutional magnitude." *Sullivan v. Blackburn*, 804 F.2d 885, 887 (5th Cir. 1986). The relevant inquiry is whether the failure to give an instruction "by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). Moreover, there is a strong presumption that errors in jury instructions are subject to harmless-error analysis. Thus, even if the instruction was erroneous, if the error is harmless, habeas corpus relief is not warranted. *Brecht v. Abrahamson*, 507 U.S. 619, 623-24 (1993). In a habeas proceeding, a constitutional error is not harmless if it "had substantial and injurious effect or influence in determining the jury's verdict." *Id.* (internal quotation marks and citation omitted).

The jury charge at issue provided in pertinent part:

> **Under the law applicable in this case, the Defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time.** Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away

7

all or part of any good conduct time earned by the prisoner.

. . . .

You may consider the existence of parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular Defendant. You are not to consider the manner in which the parole law may be applied to this particular Defendant.

The portion of the instruction in boldface is an incorrect statement of law, as inmates do not earn time off of the period of incarceration, but rather, earn the right to be considered for earlier release due to the award of good time.

A substantively correct instruction concerning the effect of the Texas parole laws does not offend the federal constitution. *California v. Ramos*, 463 U.S. 992, 1004-05 (1983)(stating that an accurate instruction on a capital defendant's eligibility for parole or commutation of sentence does not raise a federal constitutional issue)*; see also Drew v. Collins*, 964 F.2d 411, 415-16 (5th Cir. 1992). Whether the same is true when the instruction is substantively incorrect, as in this case, is unclear. However, assuming, *arguendo*, such an instruction amounts to a constitutional error, it still does not entitle a defendant to habeas relief unless there is more than a mere reasonable possibility that it contributed to the verdict. *Mayabb v. Johnson*, 168 F.3d 863, 868 (5th Cir. 1999) (citing *Woods v. Johnson*, 75 F.3d 1017, 1026-27 (5th Cir. 1996)). A federal habeas court may not grant relief on

8

trial errors unless the petitioner demonstrates that the error "had a substantial and injurious effect or influence in determining the jury's verdict." **Brecht**, 507 U.S. at 637-38. The burden of demonstrating in a collateral proceeding that an erroneous jury instruction violated the petitioner's due process rights is "greater than the showing required to establish plain error on direct appeal." **Henderson v. Kibbe**, 431 U.S. 145, 154 (1977). Moreover, the jury is presumed to have followed the trial court's instruction prohibiting consideration of the extent to which good conduct time might be awarded to or forfeited by Galvan. **Parker v. Randolph**, 442 U.S. 62, 73 (1979) ("A crucial assumption underlying that system is that juries will follow the instructions given them by the trial judge."), *overruled on other grounds by* **Cruz v. New York**, 481 U.S. 186 (1987); *cf.*, **Bagley v. Collins**, 1 F.3d 378, 381 (5th Cir. 1993) (finding an instruction by the court to the jury that it should not consider remarks made by the prosecutor was sufficient to limit the extent to which the jury considered the remarks).

In the present case, though it is clear that the trial court's instruction was inaccurate, the trial court gave further instructions to the jury that it was to disregard the manner in which good conduct time would be applied to the defendant. The jury is presumed to have followed this instruction and Galvan has failed to show that the instruction had a substantial or injurious

effect on the jury's decision. We therefore find that Galvan has failed to meet his burden of demonstrating that his due process rights were violated and hold that any error present in the jury charge was harmless.

Galvan's only remaining claim is his ineffective-assistance-of-counsel claim. Galvan bases this claim on the failure to object to the erroneous jury charge. As already stated above, to prevail on an ineffective assistance of counsel claim, Galvan must show that his counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. As we have already determined that the instruction in the jury charge did not have a substantial and injurious effect or influence on the jury, we find that Galvan cannot show any prejudice attendant to his counsel's conduct. *See* *Mayabb*, 168 F.3d at 869 (making a similar finding when it was determined that a jury instruction regarding the burden of proof in a murder trial did not have a substantial and injurious effect).

## CONCLUSION

Having carefully reviewed the parties' respective briefs and the record, we hold that the district court did not err in denying Galvan habeas relief. We therefore AFFIRM the district court's decision.

**AFFIRMED.**