United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 11, 2005**

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

_____

m 04-10323

_____

OYEKUNMI OYELUDE,

Petitioner-Appellant,

VERSUS

MICHAEL CHERTOFF,
SECRETARY, DEPARTMENT OF HOMELAND SECURITY;
ANGELA K. BARROWS,
ACTING DIRECTOR OF THE BUREAU OF CITIZENSHIP AND IMMIGRANT SERVICES IN DALLAS,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Texas
m 1:03-CV-095-C

_____

Before DAVIS, SMITH, and DEMOSS, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Oyekunmi Oyelude, a native and citizen of Nigeria, challenges the dismissal and denial of his 28 U.S.C. § 2241 petition for writ of habeas corpus. He argues that his prolonged detention, in the absence of a reasonable bond, violates due process. He specifically reasons that the finding that he is a deportable criminal alien under 8 U.S.C. § 1226(c) is clearly erroneous. Because the record does not establish that Oyelude is a criminal alien, we vacate that finding, remand for proceedings not inconsistent with this ruling, and express no further opinion as to the merits of the habeas petition.

I.

In September 2002, the Immigration and Naturalization Service ("INS")[1] charged Oyelude with remaining in the United States without authorization and detained him pending his removal; he applied for release on bond during the pendency of his proceedings.[2] He moved to cancel removal proceedings to allow the INS to adjudicate an I-130 visa petition that his purported spouse had filed. The IJ ruled against him on the I-130 petition.[3]

In December 2002, the IJ ordered Oyelude removed to Nigeria, denied voluntary departure, and denied his application for cancellation of removal.[4] In April 2003, Oyelude filed a 28 U.S.C. § 2241 petition for writ of habeas corpus setting forth the factual circumstances surrounding his seven-month detention and alleging that he was about to be deported "without cause." He asserted that he had no felony convictions,[5] challenged the denial of his I-130 petition, and argued that the $10,000 bond was unreasonable. He also asked the court to order his release during the pendency of the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] As of March 1, 2003, the Bureau of Immigration and Customs Enforcement ("BICE") of the Department of Homeland Security ("DHS") assumed responsibility for functions the INS previously had performed.

[2] In October 2002, at Oyelude's request for a change in custody status, the immigration judge ("IJ") conducted a bond hearing, granted Oyelude's bond application, and ordered him released upon (continued...)

[2](...continued) posting of a $10,000 bond. The IJ noted that Oyelude was in removal proceedings because of "an overstay" and that he had never been convicted of a criminal offense.

[3] The IJ found that Oyelude had failed to demonstrate that his children would suffer exceptional and extremely unusual hardship if he were removed from the United States. The IJ also refused to interrupt the removal proceedings, because Oyelude was not likely to be able to show, by clear and convincing evidence, that the marriage would be deemed valid. Apparently, the couple had not lived together for three years.

[4] Oyelude then filed a motion to stay the IJ's December 2002 order. BICE, on its own motion, stayed Oyelude's removal to ensure that he was properly accorded his rights before the Board of Immigration Appeals (the "BIA").

[5] Oyelude contends that although he has been arrested for outstanding traffic tickets, the case was dismissed as "time served," and he has never been tried for or convicted of a felony.

2

removal proceedings.[6] The DHS argued that Oyelude's detention is lawful under 8 U.S.C. § 1226(a), as an arrest and detention of an alien pending removal proceedings, and, citing § 1226(e), that the district court lacked jurisdiction to consider the bond determination.

The district court cited § 1226(c)(1), noting that the Attorney General is required to detain deportable criminal aliens until the final order of removal is issued. The court also relied on *Demore v. Kim*, 538 U.S. 510 (2003), for the proposition that mandatory detention of a permanent resident alien does not violate due process. The court denied as moot Oyelude's motions to stay removal, held that his claims were foreclosed by *Kim*, and dismissed his § 2241 petition.[7]

Oyelude contends that the district court erred in denying his habeas petition on the ground that he was a deportable criminal who had been mandatorily detained pursuant to § 1226(c). He urges us, *inter alia*, to vacate and remand for further proceedings.

## II.

The DHS argues that we have no jurisdiction to consider the Attorney General's discretionary determination that Oyelude should not be released. Section 1226(e) states that the "Attorney General's discretionary judgment regarding the application of this section shall not be subject to judicial review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole."

The DHS suggests that the district court dismissed Oyelude's petition for lack of subject matter jurisdiction. The order and judgment, however, do not so indicate or suggest.[8] Section 1226(e) may strip us of jurisdiction to review judgments designated as discretionary under the pertinent language of the statute, but it does not deprive us of all authority to review statutory and constitutional challenges. We retain jurisdiction to review Oyelude's detention insofar as that detention presents constitutional issues, such as those raised in a habeas petition. *See Kim*, 538 U.S. at 516-17.

## III.

Oyelude argues that the district court erred in finding that he was a criminal alien. We review the district court's determinations of law *de novo* and its findings of fact for clear error. *See Royal v. Tombone*, 141 F.3d 596, 599 (5th Cir. 1998). A finding of fact is clearly erroneous "only if it leaves the Court with the definite and firm conviction that a mistake has been made." *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002).

The district court closes with a quote from *Kim*: "Detention during removal proceedings is a constitutionally permissible part of that process." *See Kim*, 538 U.S at 531. The court omits the next, significant sentence:

---

[6] The § 2241 proceeding was transferred to the Abilene Division, Northern District of Texas, at which point the government filed a status report asserting that Oyelude's appeal before the BIA was then pending and that he had not posted the $10,000 bond and remained in detention.

[7] The court did grant Oyelude leave to supplement his habeas petition with additional documentation.

[8] The district court's opinion examines the merits of the habeas petition as applied to a § 1226(c) detention and uses the language "dismissed and denied." Those circumstances, plus the fact that at no point does that order discuss subject matter jurisdiction, militate strongly against the DHS's interpretation of the ruling.

"The INS detention of respondent, a criminal alien who has conceded that he is deportable, for the limited period of his removal proceedings, is governed by [the cases cited for the proposition in the previous sentence]." *See id.* Oyelude has not conceded that he is a criminal alien, so *Kim* does not foreclose a potential challenge to a § 1226 detention.[9]

The district court also cites two unpublished district court cases, *Stephens v. Estrada*, 2003 WL 21499323 (N.D. Tex. June 19, 2003), and *Omari v. Estrada*, 2003 WL 21355891 (N.D. Tex. June 5, 2003), for the proposition that Oyelude's detention is constitutional. These cases are consistent with *Kim*; the district court's decision here is not. In *Stephens* the petitioner had been convicted of assault on a family member, *see Stephens*, 2003 WL 21499323, at *1, and in *Omari* the petitioner had been convicted of fifth degree assault of his wife, *see Omari*, 2003 WL 21355891, at *1. The record in the instant case gives no indication that Oyelude has criminal convictions.[10]

*Kim* dealt with the constitutionality of mandatorily detaining criminal aliens during the pendency of deportation proceedings. Evidently the district court believed that Oyelude was being detained pursuant to § 1226(c), the provision at the heart of the constitutional dispute in *Kim*, although on appeal the DHS opportunistically implies that the district court approved his detention pursuant to some other provision.[11]

Insofar as the district court "found" that Oyelude was being detained as a criminal alien under the authority of § 1226(c), that finding is clearly erroneous. The IJ's bond decision states that Oyelude was in removal proceedings "as an overstay" and that he "apparently has never been convicted of any criminal matter." The Attorney General does not contest that finding on appeal.[12]

---

[11] Perhaps the district court considered Oyelude as being in custody under the more general detention provisions of § 1226(a). The IJ set a $10,000 bond, a ruling that is incompatible with the very limited circumstances § 1226(c)(2) sets forth for allowing criminal aliens involved in removal proceedings to be released on bond. It is, however, compatible with the more general detention provisions of § 1226(a).

The district court recognized both that Oyelude was being detained and that the IJ had set bond at $10,000. We refuse on these grounds, however, to impute to that court the position that Oyelude was being detained pursuant to § 1226(a). The opinion does not mention that subsection. Moreover, its reasoning seems to assume that Oyelude was a criminal alien and therefore that the jurisprudence surrounding § 1226(c) applied.

[12] We also decline to order Oyelude's release during the pendency of his petition. The district court has not had an opportunity to rule on that request, and Oyelude provides no authority explaining why we should grant such unusual relief. Moreover, we reject two additional requests from Oyelude: that we (1) order BICE to adjudicate his I-130 petition and (2) direct the Attorney General to expedite the processing of that petition. Oyelude provides no relevant legal authority for such relief, (continued...)

---

[9] The DHS invokes language in *Kim* that one might read in a vacuum as supporting its contention, but that language, when read in context, does not directly address the constitutionality of non-§ 1226(c) detentions.

[10] We express no opinion as to whether Oyelude is actually a criminal alien; we merely conclude that there is no support for that finding in the record now on appeal.

This matter is VACATED and REMANDED so that the district court may consider the foregoing explanation. We express no view as to the ultimate merits of this proceeding.

[12](...continued)
nor has the district court ruled on these requests.